UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

EL TALLA TRADING, INC.,
a Florida corporation,

    Plaintiff,

Case No. 09-62004-CV-ZLOCH/ROSENBAUM

v.

SANDHILLS PUBLISHING COMPANY,
d/b/a MACHINERY TRADER,
a Nebraska corporation,

    Defendant.
_____/

## SPC's MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, Sandhills Publishing Company d/b/a Machinery Trader ("SPC"), pursuant to Federal Rule of Civil Procedure 56(b), hereby moves for final summary judgment against Plaintiff, El Talla Trading, Inc. ("El Talla").

### Introduction

El Talla has sued SPC, operator of an Internet bulletin board for buyers and sellers of heavy equipment, for fraudulent and negligent misrepresentation. Specifically, El Talla alleges that a 20-year old sales intern mistakenly opined that a third party posting an advertisement on SPC's bulletin board was "very legit." Based on this opinion, El Talla purchased not only the one piece of equipment posted on SPC's bulletin board, but also two additional pieces of equipment that it privately negotiated with the seller. Summary judgment is warranted for the following reasons:

1) The statement "very legit" is a nonactionable opinion, barring both the fraudulent and negligent misrepresentation claims;

CLARKE SILVERGLATE & CAMPBELL, P.A.

2) Plaintiff's fraudulent misrepresentation claim is barred because SPC's intern believed his statement to be true when he made it;

3) Plaintiff's negligent misrepresentation claim fails because SPC is not in the business of providing opinions about third parties and, further, had no pecuniary interest in the subject transaction; and

4) Plaintiff's negligent misrepresentation claim also fails because El Talla could not justifiably rely on the statements of SPC's sales intern in light of the multiple conspicuous disclaimers and warnings on SPC's website, as well as the more reasonable alternative means of due diligence available to it at the time.

No genuine and material issue of fact remains on these matters, and therefore the case is ripe for summary judgment.

### Statement of Material Facts to Which There are No Genuine Issues to Be Tried

1. Mahmoud and Suha El Talla, husband and wife, own El Talla Trading, Inc. ("El Talla") (El Talla Dep. at 8-9).[1]

2. Though Suha El Talla is the President of El Talla, Vice President Mahmoud El Talla runs the company on his own, including the purchase and sale of heavy equipment. (Id. at p. 14).

3. Machinery Trader is a publication owned and operated by Sandhills Publishing Company ("SPC"). (Lewis Decl. at ¶ 2)(Exhibit B).

4. Machinery Trader operates a website located at www.machinerytrader.com ("Machinerytrader.com"). (Id. at 3).

---

[1] Excerpts of Mahmoud El Talla's deposition are attached as Composite Exhibit A.

5. Machinerytrader.com is an Internet bulletin board where sellers of heavy equipment post advertisements for the sale of their equipment. For no charge, buyers can review the advertisements, contact the seller, and negotiate transactions. (Id. at 4).

6. SPC is not a party to any transactions between the buyers and sellers of heavy equipment posted for sale on Machinerytrader.com (Id. at 5).

7. On its homepage, Machinerytrader.com has a link highlighted in yellow which states "Beware of Internet Scams." (Id. at 6).

8. A user who clicks the "Beware of Internet Scams" link on Machinerytrader.com is routed to a page with the heading "Don't be a Target of Internet Scams!" The page was last updated on January 12, 2009, and goes on to provide several warnings to users, including the following:

a. Take your time and research your purchase first—it could save you thousands of dollars!

b. If a deal seems to be too good to be true, it is.

c. If you don't know the buyer/seller, investigate them thoroughly.

d. Don't be influenced by an extreme sense of urgency by the other party. A scammer will often try to pressure you into making a quick decision.

e. WARNING: *Machinery Trader* and MachineryTrader.com offer NO "Buyer Protection" programs or Guarantee/Warranty services.

f. We provide paid advertising only, and we do not participate in any other facets of buy/sell transactions.

(Id. at 7).

9. Between 2008 and 2009, El Talla purchased heavy machinery approximately 15 times from advertisements he saw on Machinerytrader.com. (El Talla Dep. at 19-20).

10. Aside from the 15 purchases referenced in paragraph 9, El Talla also made one purchase based on a print advertisement in a trade publication called "Equipment Trading." (Id. at 15).

11. SPC does not own or operate a trade publication called "Equipment Trading" or "Equipment Trader." (Lewis Decl. at ¶ 8).[2]

12. During the approximately one-year period in which El Talla bought and sold heavy equipment, he reviewed Machinerytrader.com every day. (El Talla Dep. at 18).

13. El Talla reviewed Machinerytrader.com in search of advertisements for the sale of specific models of Caterpillar wheel loaders, forklifts and generators. (Id. at 26-27).

14. El Talla's business model for heavy equipment was to buy used equipment from U.S. sellers and ship the equipment to Egypt, where a business partner would sell the equipment at a profit. (Id. at 12-13).

15. Prior to purchasing equipment from a seller, the only due diligence that Mahmoud El Talla ever personally performed was to communicate with the seller and review the information posted on the advertisement about the equipment. (Id. at 32-34).

---

[2] Upon information and belief, El Talla may have been mistaken when testifying about a trade publication named "Equipment Trading." "Equipment Trader" is a well-known trade publication.

16. With one exception when the seller was local, Mahmoud El Talla never traveled to meet an equipment seller or inspect or verify the equipment he was purchasing. (Id. at 46-47).

17. For all of its heavy equipment purchases, El Talla hired Crescent Line, Inc. ("Crescent Line"), a shipping company, to pick up the equipment and deliver it to Egypt for subsequent sale. (Id. at 35).

18. In coordinating Crescent Line's provision of services, Mahmoud El Talla primarily communicated with an employee named Jason Fielder. (Id. at 37).

19. As part of its services, Crescent Line would perform a lien search on the equipment. (Id. at 35).

20. Prior to purchasing equipment, Mr. El Talla would ask Jason Fielder if he was knowledgeable about the equipment seller. (Id. at 56).

21. Once El Talla elected to execute a heavy equipment transaction, Crescent Line would pick up the equipment and deliver it to Egypt to a company called Alshanwaee Company. (Id. at 29).

22. Alshanwaee would receive and sell the equipment in Egypt, sharing the profits with El Talla. (Id. at 31).

23. SPC offers sellers one free advertisement on Machinerytrader.com for their first listing. (Lewis Decl. at ¶ 9).

24. Shane Becker ("Becker") is a sales intern at SPC. He began working for SPC on September 23, 2009. (Becker Dep. at 8).[3] Becker was 20 years old in October 2009 and is a student at the University of Nebraska. (Becker Dep. at 7).

---

[3] Excerpts of Shane Becker's deposition are attached as Composite Exhibit C.

25. In October of 2009, Becker's primary job duty at SPC was to process and post free listings for first-time users of Machinerytrader.com. (Lewis Decl. at ¶ 11).

26. In October of 2009, SPC employees, including Becker, were trained to post advertisements by first time users only if they could 1) reach them by telephone and speak with the seller; and 2) check the seller's reported physical address against a white pages listing. (Id. at 12).

27. On or about October 21, 2009, an e-mail from Sydney Vincent ("Vincent") was routed to Becker. Vincent purported to be writing on behalf of MSR International, Inc. ("MSR"), and sought to post an advertisement on Machinerytrader.com for the sale of heavy equipment. (Becker Dep. at 23).

28. Pursuant to company policy, Becker called and spoke with Vincent on the telephone and was able to trace the telephone number provided to a business. (Id. at 26).

29. On October 22, 2009, MSR's advertisement was posted on Machinerytrader.com. (Id. at 8).

30. MSR's advertisement was for a single piece of equipment, a 1990 Caterpillar Wheel Loader Model 966E. (El Talla Dep. at 7).

31. The 966E Wheel Loader was listed for sale for $49,850. (Id. at 8).

32. Mahmoud El Talla saw MSR's advertisement on October 22, 2009. (Id. at 69).

33. Mahmoud El Talla was interested in purchasing the equipment because it was listed at a "very good" price and he could make a lot of money re-selling it. (Id. at 72).

34. Mahmoud El Talla called and reached Vincent on October 22, 2009. El Talla confirmed that the machine was available for sale, negotiated the price down $1,000, and requested a bill of sale from Vincent. El Talla did not ask Vincent for any references of other people who had purchased equipment from him before (Id. at 74-75, 87).

35. Within a half hour, Sydney Vincent e-mailed a bill of sale to Mahmoud El Talla. (Id. at 76).

36. Upon receiving the bill of sale, Mahmoud El Talla contacted Jason Fielder of Crescent Line, Inc. (Id. at 76).

37. El Talla faxed the bill of sale to Fielder on October 22, 2009, and asked him to run a check on MSR. (Id. at 77).

38. Fielder reported back later the same day that he had never heard of MSR. Fielder also inquired of his drivers, who similarly had not heard of MSR. (Id. at 78).

39. El Talla had experienced one to three prior instances where his shipping company was not familiar with the seller. (Id. at 79-80).

40. On these prior occasions, El Talla contacted the seller again and also reviewed other advertisements posted by the seller to satisfy himself that the seller was a legitimate company. (Id. at 80).

41. On this particular occasion with MSR, El Talla was more concerned because the listed price seemed too good to be true. The price was $10,000 below its market value. (Id. at 82).

42. Instead of walking away from the deal, making arrangements to meet Vincent, making arrangements to inspect the equipment, or making arrangements to

have someone else meet Vincent or inspect the equipment, El Talla decided to call Machinery Trader, a third party to his potential transaction. (Id. at 83).

43. El Talla called the Machinery Trader help desk on October 22, 2009, and was transferred to Becker, the intern who posted the MSR listing. (Id.).

44. El Talla told Shane Becker that he was interested in the equipment because it was a very good price, but wanted to know whether MSR was "legit." (Id. at 84).

45. Based on his verification of MSR's address, Becker told El Talla that MSR was "very legit" and told him to "go ahead and buy it." (Id.).[4]

46. Becker's statement was based on the best information available to him at the time, and he believed it to be true. (Becker Dep. at 32).[5]

47. El Talla did not leave his name or his telephone number with Mr. Becker. (Id. at 30). He also did not ask Mr. Becker whether he had any experience in purchasing heavy equipment. (El Talla Dep. at 92).

48. El Talla contacted Jason Fielder again, still on October 22, 2009, and relayed his conversation with Shane Becker. Fielder, whose company is paid approximately $4,000 for each shipment, encouraged El Talla to purchase the equipment. (Id. at 36, 86).

---

[4] SPC disputes that Shane Becker told El Talla that MSR was "very legit" or told El Talla to go ahead and buy the equipment. However, for purposes of its Motion for Summary Judgment only, SPC accepts El Talla's allegations as true.
[5] Undersigned's full-sized copy of Becker's deposition is missing page 32. Accordingly, SPC includes a copy of page 32 from the condensed deposition transcript.

49. El Talla did no further searches on Machinerytrader.com to see if MSR had any other listings and undertook no additional Internet research on Sydney Vincent or MSR. (Id. at 87).

50. El Talla contacted Sydney Vincent again on October 22, 2009. In this conversation, El Talla agreed to purchase not only the listed piece of equipment from Sydney Vincent, but further agreed to purchase two other pieces of Caterpillar equipment not listed on Machinerytrader.com for a total of $108,000 for the three machines. (Id. at 90).

51. Again, El Talla did not ask Vincent for any references. (Id. at 87).

52. On October 23, 2009, after El Talla and Vincent exchanged executed copies of a bill of sale, El Talla wired Vincent $49,000 for the first piece of equipment. Over the course of the next few days, El Talla sent two additional wire transfers to Vincent for the other pieces of equipment for a total of $108,880. (Id. at 90).

53. El Talla did not inspect, either personally or through a representative, any of the equipment he attempted to purchase from Vincent. (Id. at 91).

54. After issuing the first wire transfer, El Talla contacted Jason Fielder to make arrangements for Crescent Line's pickup of the equipment. (Id. at 99).

55. Also on October 23, 2009, SPC received a complaint from an unidentified customer that he had difficulty reaching Sydney Vincent regarding MSR's posted advertisement. In an abundance of caution, SPC removed Vincent's advertisement from Machinerytrader.com. (Lewis Decl. at ¶ 13). However, because El Talla had not left his name or contact information, SPC had no means to reach him to inform him of its decision to remove the advertisement.

56. On or about October 30, 2009, Crescent Line reported back to El Talla that he could not locate MSR at the address provided. (El Talla Dep. at 101).

57. El Talla was never able to reach MSR or Sydney Vincent again. (Id. at 105).

58. El Talla called the Toronto police, the Federal Bureau of Investigation and a private investigator. He also called his bank to attempt to stop payment on his wire transfers. (Id. at 102-05). His efforts to locate Sydney Vincent or recoup his money were unsuccessful. (Id.).

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) mandates summary judgment if, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 796 (1999). The trial judge has both the authority and the responsibility to judge the quantum and quality of proof necessary to support liability under governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The "mere existence of some factual dispute . . . [does] not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. Thus, a party opposing a motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

CASE NO. 09-62004-CV-ZLOCH/ROSENBAUM

## Discussion

El Talla's two causes of action, fraudulent misrepresentation and negligent misrepresentation, require similar elements. A fraudulent misrepresentation claim requires the following:

1. A false statement concerning a material fact;
2. the representor's knowledge that the representation is false;
3. an intention that the representation induce another to act on it; and
4. consequent injury by the party acting in reliance on the representation.

Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010). A negligent misrepresentation claim, where the parties are not in contractual privity, arises under the following circumstances:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts, § 552; Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 337 (Fla. 1997); see also Vesta Construction and Design, LLC v. Lotspeich & Associates, Inc., 974 So. 2d 1176, 1182 (Fla. 5th DCA 2008).

As set forth below, El Talla cannot establish a genuine issue of material fact on the essential elements for both the fraudulent and negligent misrepresentation claims on which it bears the burden of proof at trial.

**A.   Plaintiff's claims are based on non-actionable statements of opinion or "puffing"**

CLARKE SILVERGLATE & CAMPBELL, P.A.

Both of El Talla's misrepresentation claims require a false statement of **material fact**. See Lance v. Wade, 457 So. 2d 1008, 1011 (Fla. 1984); Gilchrist Timber Co. v. ITT Rayonier, Inc., 127 F.3d 1390, 1396 (11th Cir. 1997) (emphasis added). Statements of opinion are not actionable. See Melzer v. Agay, 426 So. 2d 1049, 1050 (Fla. 3d DCA 1983)(statements about employee's qualifications and experience are not actionable in fraud); Thompson v. Bank of New York, 862 So. 2d 768, 770-71 (Fla. 4th DCA 2003)(property seller's statement that buyer was "financially able to qualify and afford the subject premises" not actionable); Wasser v. Sasoni, 652 So. 2d 411, 412 (Fla. 3d DCA 1995)(building vendor's statement that the subject building was "a very good building" requiring "normal type of maintenance" and "an excellent deal" was not actionable); Tres-AAA-Exxon v. City First Mortgage, Inc., 870 So. 2d 905, 906 (Fla. 4th DCA 2004)(requirement of misstatement of fact equally applicable to negligent misrepresentation claims).

The only alleged misrepresentation of SPC is the statement by its 20-year old intern Shane Becker that MSR is a "very legit" company. This is a statement of pure opinion. Mr. El Talla asked for Becker's opinion and received it. The scenario is no different than a car buyer wiring $108,880 for a Bentley, sight unseen, based on a comment that the car "runs like a dream." Statements of opinion like these have never been actionable under Florida law. See supra. Taking the facts in the light most favorable to El Talla, SPC did not provide a false statement of material fact. It provided a non-actionable opinion. Summary judgment is warranted on both counts on this issue alone.

**B.    Plaintiff's fraudulent misrepresentation claim fails because Shane Becker believed his statements to be true**

The uncontroverted evidence is that whatever statement(s) Becker made to Mr. El Talla about MSR or Sydney Vincent during their initial discussion, Becker believed to be true based on his own research prior to activating the MSR advertisement. The knowledge element of a fraudulent misrepresentation claim must be established either by 1) actual knowledge of falsity; 2) lack of knowledge of either truth or falsity; or 3) circumstances under which the representor ought to have known the falsity of his statements. Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So. 2d 168, 172 (Fla. 4th DCA 1994); Sun Life Assur. Co. of Canada v. Land Concepts, Inc., 435 So. 2d 862, 863 (Fla. 4th DCA 1983).

Becker's statements fall into none of these categories. He believed his statements to be true and had no information from which he ought to have known they were false. The record contains no evidence to the contrary. For this additional reason, summary judgment is warranted on Count II for fraudulent misrepresentation.

**C.    Plaintiff's negligent misrepresentation claim fails because SPC had no pecuniary interest in El Talla's transaction with MSR and is not in the business of providing advice to third parties**

To prevail on its negligent misrepresentation claim, El Talla must establish that SPC either was in the business of providing opinions about sellers on its site or that SPC had a pecuniary interest in the transaction at issue. The Florida Supreme Court adopted Section 552 of the Restatement (Second) of Torts as the law on negligent misrepresentation in Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 337 (Fla. 1997). In Reimsnyder v. Southtrust Bank, N.A., 846 So. 2d 1264 (Fla. 4th DCA 2003), Florida's Fourth District Court of Appeal addressed the specific issue presented

in this case – whether Gilchrist's adoption of Section 552 requires, for liability to attach, the defendant to have a pecuniary interest in the underlying transaction or be in the business of providing the information. In Reimsnyder, a stock investor was contemplating investing with a company. (Id. at 1265). The company listed the defendant bank as a reference. (Id.) Upon questioning from the investor, a bank officer stated that the company was reputable. (Id.) After the investor lost 80% of his investment, he sued the bank for negligent misrepresentation. (Id.) Affirming summary judgment for the defendant, the Fourth District confirmed that Florida adopted Section 552(1) in full, including the requirement of a pecuniary interest or for the defendant to be in the business of providing such information.

Accordingly, when the information supplied is "gratuitous," no liability attaches because the user of the information is not justified as a matter of law in expecting the supplier to have used due care in giving the information. (Id. at 1267) (citing Comment d. to Section 552).

It is undisputed that neither SPC nor Shane Becker is in the business of providing advice to either buyers or sellers about whether to enter into a transaction. The Machinerytrader.com website expressly says so. (See Exhibit D)("WARNING: *Machinery Trader* and MachineryTrader.com offer NO "Buyer Protection" programs or Guarantee/Warranty services. If you are instructed to send money to us as a part of any such program, do NOT do so. **We provide paid advertising only, and we do not participate in any other facets of buy/sell transactions.**")(emphasis added) Machinerytrader.com is an online bulletin board bringing buyers and sellers together. SPC had no pecuniary interest in the subject transaction. MSR took out a free listing,

and SPC did not stand to gain a dollar of revenue whether or not the transaction took place. Any information Becker provided was gratuitous and cannot form the basis of a negligent misrepresentation claim. Based on the foregoing, summary judgment as to Count I for negligent misrepresentation is warranted.

Moreover, at minimum the Court should grant partial summary judgment on Plaintiff's negligent misrepresentation count as to the two pieces of equipment not listed on Machinerytrader.com. SPC had no possible pecuniary interest in the privately negotiated sale of two pieces of equipment that were never advertised with SPC.

**D. Plaintiff's negligent misrepresentation claim cannot survive summary judgment because Mr. El Talla was not justified as a matter of law in relying on a sales intern's opinion about whether MSR was a legitimate company**

Mr. El Talla knew of multiple red flags about the subject transaction prior to wiring funds to MSR:

1. El Talla was concerned that the listed price for the equipment was "too good to be true."

2. No one at Crescent Line, El Talla's shipper and typical source of due diligence, had ever heard of MSR or Sydney Vincent.

El Talla, as a daily user of Machinerytrader.com, also knew or should have known that the site offers no "Buyer Protection Program" or warranties on the machinery advertised on its website. The site expressly and conspicuously states that "[SPC does] not participate in any other facets of buy/sell transactions." In light of these red flags, El Talla could have done any of the following to help further investigate the $108,000 transaction and avoid his alleged loss:

1. He could have walked away from the transaction.

2. He could have reviewed Machinerytrader.com's website to see if MSR had any other listings.

3. He could have requested references from Sydney Vincent from other buyers who had successfully purchased equipment from MSR.

4. He could have personally traveled to confirm MSR's existence, meet Sydney Vincent face-to-face, and verify that MSR possessed the equipment.

5. He could have hired someone to inspect the equipment.

Contrary to these more reasonable options, El Talla chose the path of least resistance and called SPC. Even upon calling SPC, he did not act reasonably. He never asked for a manager, he never left his contact information, he did not ask Becker about his background to determine whether he would be a reliable source to answer his question. He wanted the information as quickly and easily as possible so that he could get his money as soon as possible.

A trial court may find a lack of justifiable reliance as a matter of law based on uncontroverted facts in the record, as multiple Florida courts have done where alleged verbal statements are contradicted by written disclaimers. For example, in FDIC v. High Tech Medical Systems, Inc., 574 So. 2d 1121 (Fla. 4th DCA 1991), the FDIC, on behalf of a liquidated bank, sued an accounting firm for negligence, breach of contract, fraudulent misrepresentation and negligent misrepresentation. Id. at 1122. The bank alleged that the accounting firm induced it to loan funds to High Tech by orally promising to guarantee High Tech's receivables and inventory. Id. at 1123. However, a concurrent written correspondence from the accounting firm confirmed that it was making no such certifications or guarantees. Id. Based on the written disclaimer, the

court found as a matter of law that the bank could not justifiably rely on the accounting firm's statements about a third party. Id.

Similarly, in Tevini v. Roscioli Yacht Sales, Inc., 597 So. 2d 913 (Fla. 4th DCA 1992), a yacht buyer sued the seller and broker after the purchased vessel was reported stolen by a third party and was seized by authorities. The buyer sued the broker for negligent misrepresentation based on the broker's verbal statement that the seller owned the yacht. (Id. at 914). However, the written agreement between the buyer and the broker expressly stated that the broker could not guarantee the accuracy of information about the yacht or warrant the condition of the yacht. (Id. at 913). In light of the written disclaimer, the Fourth DCA held that a directed verdict should have been entered in favor of the broker. (Id. at 915).

El Talla's case is far less compelling than even the losing positions taken in High Tech and Tevini because Becker never certified or guaranteed anything. He provided an opinion. Meanwhile, on Machinerytrader.com, a website Mr. El Talla reviewed every day, SPC provided multiple conspicuous disclaimers and warnings, advising consumers that it has no buyer protection program, no guarantees or warranties, and does not participate in transactions between buyers and sellers.

For the reasons discussed above, El Talla could not justifiably rely on statements from Becker about whether MSR was "legit." Accordingly, summary judgment on Count I for negligent misrepresentation is warranted.

E. **Alternatively, Plaintiff's punitive damages claim should be stricken from the negligence count**

To sustain an award of punitive damages in negligence, the character of negligence must be of a gross and flagrant character, evincing reckless disregard of

CASE NO. 09-62004-CV-ZLOCH/ROSENBAUM

human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them. <u>James Crystal Licenses, LLC v. Infinity Radio, Inc.</u>, 43 So. 3d 68, 77 (Fla. 4th DCA 2010); <u>Air Ambulance Professionals, Inc. v. Thin Air</u>, 809 So. 2d 28, 31 (Fla. 4th DCA 2002).

Plaintiff did not plead these heightened requirements, nor has it come close to creating genuine material fact issues as to whether Becker acted with reckless disregard or wantonness. If Plaintiff's fraud claim falls, its punitive damages claim must fall with it.

### Conclusion

Based on the foregoing, final summary judgment on both counts is warranted. In the alternative, Plaintiff's punitive damages request should be stricken from the negligence count.

Respectfully submitted,

CLARKE SILVERGLATE & CAMPBELL, P.A.

By: **s/Craig Salner**
Spencer H. Silverglate
Florida Bar No. 769223
ssilverglate@csclawfirm.com
Craig Salner
Florida Bar No. 669695
csalner@csclawfirm.com
799 Brickell Plaza, 9th Floor
Miami, Florida  33131

CASE NO. 09-62004-CV-ZLOCH/ROSENBAUM

Telephone: (305) 377-0700
Telecopier: (305) 377-3001

Attorneys for Defendant
Sandhills Publishing Company,
d/b/a Machinery Trader

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on the persons listed below via transmission of Notices of Electronic Filing generated by CM/ECF or mail as indicated below.

John J. Hanson
John J. Hanson, P.A.
E-mail: jjhanson@me.com
320 Southeast Tenth Court
Fort Lauderdale, FL 33316
Telephone: (954) 514-9292
Facsimile: (954) 514-9293
*Attorneys for Plaintiff*
via CM/ECF

Robert W. Stickney, Esq.
Robert W. Stickney, P.A.
E-mail: rwstickney@yahoo.com
One Financial Plaza
100 S.E. 3rd Avenue, Suite 2510
Fort Lauderdale, FL 33394
Telephone: (954) 767-8908
Facsimile: (954) 767-8938
*Attorneys for Plaintiff*
via CM/ECF

CLARKE SILVERGLATE & CAMPBELL, P.A.

By: __s/Craig Salner__
Craig Salner